UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON BUELOW,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PLAZA MOTORS OF BROOKLYN, INC.<br>d/b/a PLAZA HONDA,<br><br>　　　　　Defendant. | No. 2:16-cv-02592-KJM-AC<br><br><br>ORDER |

   A buyer sues a car dealership for allegedly misrepresenting the condition of the car it sold him. Defendant Plaza Motors of Brooklyn, Inc. ("Plaza") now moves to dismiss for lack of personal jurisdiction. Mot., ECF No. 9. Plaintiff Brandon Buelow ("Brandon") opposes. Opp'n, ECF No. 11. As provided by Local Rule 230(g), the court submitted the matter without a hearing. Min. Order, ECF No. 15. For the reasons set forth below, the court now GRANTS Plaza's motion to dismiss.

I.  FACTUAL ALLEGATIONS

   Brandon is a captain in the United States Air Force who was stationed at Joint Base McGuire-Dix-Lakehurst in New Jersey until sometime in late 2015. Compl. ¶¶ 4, 6, ECF No. 1. Brandon received orders that he was being transferred to Travis Air Force Base in

California, so he and his wife Angela Buelow ("Angela") (collectively "the Buelows") decided to buy a new car "to help facilitate their cross-country relocation." *Id.* ¶¶ 6–7.

Plaza is a car dealer in New York and its principal place of business is in Brooklyn. *Id.* ¶ 5. The Buelows saw an advertisement Plaza had placed on the website www.autotrader.com, advertising the sale of a new 2016 Honda Pilot. *Id.* ¶¶ 8–9. Angela telephoned Plaza to find out whether the car was still available and to get more details about its condition. *Id.* ¶¶ 11–12. On that call, Angela informed Plaza's salesperson Richard Garcia ("Garcia") that the Buelows were relocating to California and would be taking the car with them. *Id.* ¶ 11. Also on that call, Garcia told Angela the car was new but that it had been driven for roughly three hundred miles because a prior prospective purchaser had arranged for it to be transferred from Virginia to New York, before the prospective purchaser ultimately selected a vehicle with a different trim package. *Id.* ¶ 12. Garcia told Angela that Plaza would sell the Buelows the car for $41,000, at a discount from the advertised price of $43,200, to match the price a dealership in New Jersey was offering for a new Honda Pilot. *Id.* Satisfied with the conversation, Angela arranged a credit card payment to Plaza to hold the car until the next day when she and Brandon could drive from their home in New Jersey to Plaza's premises in New York to complete the purchase. *Id.* ¶ 13.

The next day, the Buelows visited Plaza's Brooklyn location and met with Garcia to discuss the car. *Id.* ¶¶ 14–15. Garcia again told the Buelows that Plaza would sell them the car for $41,000. *Id.* ¶ 16. Brandon noticed the car did not have a Monroney sticker affixed. *Id.* ¶¶ 17–18. A Monroney sticker is displayed in the window of all new cars and contains information about the manufacturer's suggested retail price, the car's specifications, fuel economy ratings, and the like. *Id.* ¶ 17; *see also* 15 U.S.C. § 1232 (listing the information a Monroney sticker must provide). When Brandon asked Garcia about the missing sticker, Garcia told Brandon the "prior dealership had removed the window sticker before the [car] was driven up from Virginia," but that Garcia "would send [Brandon] a copy of the . . . sticker." Compl. ¶¶ 18–19.

The parties then began filling out paperwork to complete the transaction. Plaza employees prepared several documents that Brandon signed, including the following:

2

1. A document entitled "New York State Department of Motor Vehicles - Retail Certificate of Sale," which identified Brandon as the purchaser of the car, identified "American Honda Motor, Torrance, CA" as the prior owner, and identified the type of sale as "Retail" and "New." *Id.* ¶ 21. American Honda Motor ("American Honda") is a California-based subsidiary of Honda Motor Co., Ltd. and distributes all Honda-branded cars in the United States. Schlanger Decl. ¶¶ 4, 6, ECF No. 11-1.

2. A document entitled "Application of Certificate of Ownership," a New Jersey Motor Vehicle Commission form, indicating that Brandon owned the car and American Honda Finance was the lienholder. Compl. ¶ 22. American Honda Finance ("Honda Finance") is a California-based Honda entity that offers financial services and retail loans on Honda-branded products. Schlanger Decl. ¶¶ 12–16.

3. A document entitled "New Vehicle Invoice," which stated that the car was "NEW," that Plaza sold it to Brandon, and that Honda Finance was the lienholder. Compl. ¶ 23.

4. A document entitled "Motor Vehicle (Automobile) - Simple Interest - Retail Installment Contract - Consumer Credit Document New York," which indicated the car was "NEW." *Id.* ¶ 27.

Brandon also signed a limited power of attorney authorizing specified Plaza employees to "sign and execute any documents necessary to process" the transfer of title, registration and procurement of license plates for the car. *Id.* ¶ 28. Finally, Garcia helped the Buelows connect their Bluetooth devices to the car. *Id.* ¶ 30. During that process, the Buelows noticed other Bluetooth devices had previously been paired with the car and they asked Garcia for an explanation. *Id.* ¶ 31. Garcia replied: "the guy who drove the car up from Virginia wanted to listen to his own music." *Id.*

Unbeknownst to the Buelows, the car Plaza sold them was not actually new. It had been owned previously by a man named Alonzo Nimmons ("Nimmons"). *Id.* ¶¶ 35–36.

Nimmons bought the car from Plaza about a month before the Buelows did. *Id.* ¶ 37. A week after Nimmons purchased the car, he dropped it off with Plaza so Plaza could repair a "minor issue." *Id.* ¶ 38. When Nimmons returned to pick up the car, the front passenger side of the car had been "crushed in." *Id.* ¶ 39. Nimmons demanded and eventually received a replacement car from Plaza. *Id.* ¶ 40. Plaza never told the Buelows the car had been previously owned or that it had been damaged. *Id.* ¶ 41. In fact, Plaza "made false assertions to the contrary in an attempt to conceal the true facts." *Id.* The Buelows only learned about the car's history after an irregularity with the car's satellite radio subscription motivated them to investigate. *Id.* ¶¶ 32–35. The Buelows are now aware that the car "is not, in fact, a pristine, low-mileage, single-owner vehicle, but rather a used car with multiple owners, undisclosed accidents, and uncertain provenance." *Id.* ¶ 43.

II. PROCEDURAL BACKGROUND

On October 31, 2016, Brandon filed a complaint against Plaza in this court. He asserts the following claims: (1) violation of California's Song–Beverly Consumer Warranty Act, Compl. ¶¶ 48–60; (2) violation of the federal Magnuson–Moss Warranty Act for Breach of Express Written Warranty, *id.* ¶¶ 61–69; (3) violation of the federal Magnuson–Moss Warranty Act for Breach of "Implied Written Warranty," *id.* ¶¶ 70–88; (4) rescission of the purchase, *id.* ¶¶ 89–93; and (5) violation of the New Jersey Consumer Fraud Act, *id.* ¶¶ 94–99.

On February 3, 2017, Plaza filed this motion to dismiss for lack of personal jurisdiction. Mot. Brandon opposed, Opp'n, and Plaza replied, Reply, ECF No. 13.

III. LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Although the defendant brings the motion, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

Where, as here, there is no federal statute governing personal jurisdiction, the court applies the law of the state in which it sits. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608–09 (9th Cir. 2010). "California's long-arm jurisdictional statute is coextensive with federal

4

due process requirements." *Id.* (citing Cal. Civ. Proc. Code § 410.10). "For a court to exercise personal jurisdiction over a nonresident defendant [consistent with due process], that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

Defendant's motion focuses on the lack of "minimum contacts" necessary to support specific personal jurisdiction, as Brandon concedes general jurisdiction does not exist, Opp'n 11:6–9.[1] In the Ninth Circuit, courts apply a three-part test to determine whether the exercise of specific jurisdiction is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff fails, the inquiry ends and specific jurisdiction does not exist. *Id.* If the plaintiff succeeds, the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

If, as here, the court decides the motion without an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdictional facts." *Id.* at 800. The court may consider evidence outside the pleadings, including affidavits and other materials submitted

---

[1] Specific (or case-related) jurisdiction depends on a connection between the forum and the underlying controversy, and stands in contrast to general (or all-purpose) jurisdiction, which permits a court to "assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014).

with the motion. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 752 (2014) (noting plaintiff opposing a Rule 12(b)(2) motion submitted declarations and exhibits purporting to demonstrate defendant's contacts with the forum State). The court takes as true the uncontroverted allegations in the plaintiff's complaint and resolves conflicts in the parties' affidavits, if any, in the plaintiff's favor. *Boschetto*, 539 F.3d at 1015.

IV. DISCUSSION

    A. Jurisdiction

Brandon must first establish Plaza either purposefully availed itself of the privilege of conducting activities in California or purposefully directed its activities towards California. *Schwarzenegger*, 374 F.3d at 802. Purposeful availment and purposeful direction are sometimes used interchangeably, but the two are actually distinct concepts. *Id.* Courts typically employ a purposeful availment analysis in contract cases and employ a purposeful direction analysis in cases sounding in tort. *Id.* This case sounds primarily in tort, as Brandon concedes. Opp'n 12:20–23; *see also Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.*, 633 F.2d 155, 160 (9th Cir. 1980) ("[A] breach of warranty action may sound in tort."); *Parker v. Alexander Marine Co.*, No. SA CV 12-1994-DOC (ANx), 2015 WL 12712083, at *20 (C.D. Cal. May 26, 2015) ("Song–Beverly Act claims [are] more akin to tort claims than breach of contract claims, or at least [have] a 'tortious or willful flavor.'"); *Podobedov v. Living Essentials, LLC*, No. CV 11-6408 PSG (PLAx), 2012 WL 2513465, at *3 (C.D. Cal. Mar. 22, 2012) ("Although there are elements of both torts and contracts in this case, this case is primarily about Defendants' allegedly fraudulent marketing practices, and therefore sounds in tort."). The court therefore employs a purposeful direction analysis here.

Courts evaluate purposeful direction under the three-part "effects" test established in *Calder v. Jones*, 465 U.S. 783 (1984). "Under this test, a defendant purposefully directed his activities at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 803).

Brandon satisfies the first and third elements of the *Calder* test. He alleges Plaza intentionally misrepresented the condition of the car it sold him, Compl. ¶ 2, and he alleges Plaza was aware that he and his family would take the car to California when they moved, *id.* ¶ 11.

The second *Calder* element, express aiming, is the crux of this case. The salient question is "whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" *Picot*, 780 F.3d at 1214 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)). "The exact form of [this] analysis varies from case to case and 'depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue.'" *Id.* (quoting *Schwarzenegger,* 374 F.3d at 807). In this case, Brandon alleges intentional misrepresentations, so the court must consider whether Plaza expressly aimed those misrepresentations at California. *Id.*

The court concludes Plaza's actions do not connect it to California in a way that creates specific personal jurisdiction in this case. Plaza's allegedly wrongful conduct, namely the misrepresentations it made to the Buelows, all occurred on the internet, on the telephone, or at its dealership in New York. Compl. ¶¶ 9–31, 41–42. Even the underlying damage to the car occurred only in New York. *Id.* ¶ 38. Although Brandon correctly points out that the transaction has some California nexus because of the connections to American Honda and Honda Finance, Opp'n 13:25–14:11, those connections do not relate to the misrepresentations at issue here. The "specific jurisdiction inquiry is 'limited to the defendant's suit-related conduct,'" *Picot*, 780 F.3d at 1215 n.3 (quoting *Walden*, 134 S. Ct. at 1121), and "a defendant's general connections with the forum are not enough," *Bristol-Myers Squibb Co. v. Superior Court*, No. 16–466, slip op. at 7 (U.S. June 19, 2017). The only other allegation connecting Plaza to California is that Plaza employees knew the Buelows "currently lived in New Jersey but were relocating to California." Compl. ¶ 11. But that connection "is not tethered to California in any meaningful way." *Picot*, 780 F.3d at 1215. Instead, Brandon's "injury is entirely personal to him and would follow him wherever he might choose to live or travel." *Id.*

At bottom, Plaza did not expressly aim its misrepresentations at California so the *Calder* effects test is not satisfied. And because the *Calder* effects test is not satisfied, Plaza did

not purposefully direct its suit-related conduct towards California. Thus, Brandon does not satisfy the first prong of the Ninth Circuit's three-part specific jurisdiction test. The court therefore cannot exercise specific personal jurisdiction over Plaza.

B. <u>Jurisdictional Discovery</u>

Brandon seeks an opportunity to conduct jurisdictional discovery related to Plaza's contacts with California. Opp'n 20:15–16. Plaza does not respond to his request. "Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto*, 539 F.3d at 1020 (quotation omitted). But that is not the case here. The court has already credited Brandon's allegations and the affidavits submitted with his opposition brief. The facts surrounding Plaza's misrepresentations to the Buelows are well developed; they simply are insufficient to create personal jurisdiction. The court therefore DENIES Brandon's request for jurisdictional discovery.

V. <u>CONCLUSION</u>

Brandon has not made a prima facie showing that Plaza purposefully directed its allegedly wrongful actions towards California. Therefore, the court lacks personal jurisdiction over Plaza. Accordingly, the court hereby GRANTS Plaza's motion to dismiss for lack of personal jurisdiction.

IT IS SO ORDERED.

DATED: June 29, 2017.

UNITED STATES DISTRICT JUDGE